IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

GENA HARRIS,

    Petitioner,

No. 1:15-cv-01292-JDB-egb

v.

UNITED STATES OF AMERICA,

    Respondent.

ORDER DENYING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner, Gena Harris, has filed a motion to vacate, set aside, or correct her sentence (the "Petition") pursuant to 28 U.S.C. § 2255. (Docket Entry ("D.E.") 1.)[1] For the reasons that follow, the Petition is DENIED.

BACKGROUND

In September 2014, a federal grand jury sitting in the Western District of Tennessee returned a two-count indictment charging Harris with aiding and abetting in the manufacture of methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(C) (Count 1), and possession of pseudoephedrine with intent to manufacture methamphetamine, in violation of 21 U.S.C. §§

---

[1] Unless otherwise noted, record citations in this order are to documents filed in Case No. 1:15-cv-01292-JDB-egb.

841(c)(1) and (2).[2]  (*United States v. Harris*, No. 1:14-cr-10084-JDB-1 (W.D. Tenn.) ("No. 14-cr-10084"), D.E. 2.)

Attorney A. Russell Larson was appointed as defense counsel. (*Id.*, D.E. 20.) The Defendant entered into a written plea agreement with the Government, under which she agreed to plead guilty to Count 2 of the indictment and stipulate to a drug quantity of 300 to less than 1,000 grams of pseudoephedrine.[3] (*Id.*, D.E. 38.) On March 23, 2015, she pleaded guilty to Count 2. (*Id.*, D.E. 36).

The United States Probation Office submitted a presentence report (the "PSR") and an addendum to the PSR (the "PSR Addendum"). The PSR set forth the calculation of the Defendant's advisory sentencing range under the United States Sentencing Commission Guidelines Manual ("Sentencing Guidelines," "Guidelines," or "U.S.S.G.").[4] It assigned a base offense level of 32 based on a drug quantity equivalent of 3,000 to 10,000 kilograms of marijuana. *See* U.S.S.G. § 2D1.1(c)(4). A three-level enhancement was applied because "the [D]efendant . . . manufactur[ed] methamphetamine at her residence within a neighborhood, creating a substantial risk of harm to the occupants in her home and surrounding neighbors." (PSR at ¶ 19 (applying U.S.S.G. § 2D1.1(b)(13)(C)(ii)(1)).) Three points were deducted for acceptance of responsibility. *See* U.S.S.G. § 3E1.1.

---

[2] Count 1 references 21 U.S.C. § 841(b)(1)(C), which sets forth penalties for violations of § 841(a). *See* 21 U.S.C. § 841(a)-(b).

[3] In the Court's discussion of the underlying criminal case, Petitioner will be referred to as "the Defendant."

[4] Except where noted, all references to the Guidelines are to the Guidelines in effect on the date of the Defendant's sentencing. *See* United States Sentencing Commission, *Guidelines Manual* (eff. Nov. 1, 2014).

2

The Defendant was assigned a criminal history category of IV, which was based on, among other things, points for her prior Tennessee misdemeanor convictions, *see* U.S.S.G. § 4A1.2(c), and two points for her having committed the federal offense while on probation on a state conviction, *see* U.S.S.G. § 4A1.1(d). "Based on a total offense level of 32 and a criminal history category of IV, the guideline imprisonment range [was] 168 to 210 months." (PSR at ¶ 60 (emphasis omitted).)

At a hearing conducted on June 26, 2015, the Court sentenced the Defendant to 121 months' incarceration and three years of supervised release. (No. 14-cr-10084, D.E. 41.) No direct appeal was taken.

On December 3, 2015, Harris filed the Petition (D.E. 1) and supporting memorandum (D.E. 7), as well as copies of letters she had received from counsel (D.E. 7-2). She asserts the following claims:

> Claim 1: Counsel provided ineffective assistance by leading Petitioner to believe that she would receive a sentence of seventy to eighty-seven months in prison in exchange for her guilty plea and her stipulation to the drug quantity.
>
> Claim 2: Petitioner "was sentenced [based on] erroneous information added into her PSR by the probation office and the prosecution."
>
> Claim 3: The "Court erred when it sentenced [Petitioner] using the incorrect base offense level and erroneous enhancements."
>
> Claim 4: Counsel provided ineffective assistance by "fail[ing] to challenge the indictment."

(D.E. 1 at PageID 5-9.)

## DISCUSSION

The Government filed its response to the Petition, along with an affidavit from counsel and copies of letters Larson sent to the inmate during the time he represented her (D.E. 16), to which Petitioner replied (D.E. 19). Having reviewed the record in the underlying criminal case, as well

3

as the briefs, affidavits, and exhibits, the Court determines that Harris has not established entitlement to relief on any of her claims. Because the claims are, variously, belied by the record in the underlying criminal case, not well pleaded, or non-cognizable, no hearing is necessary.

I. Legal Standards

A prisoner seeking to vacate her sentence under § 2255 "must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* at 333. A petitioner has the burden of proving that she is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A § 2255 claim that an attorney's ineffective assistance has deprived a criminal defendant of her Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court considering a claim of ineffective assistance must apply "a strong presumption" that counsel's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). Prejudice is established where there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

II. Claim 1

Petitioner contends that her attorney performed deficiently by erroneously promising her that she would receive a sentence of seventy to eighty-seven months' incarceration if she pleaded guilty to Count 2 and stipulated to a drug quantity of 300 to less than 1,000 grams of pseudoephedrine. In support, she has submitted a copy of counsel's February 2015 letter to her in which he wrote: "Based on your relatively limited criminal history it would appear that you would be sentenced at the lower end of your Guideline Range . . . of 70 to 87 months." (D.E. 7-2 at PageID 37; D.E. 16 at PageID 95.) She points out that she did not have a "relatively limited criminal history," as the PSR later established. As to the drug quantity, she insists the PSR's attribution of 300 or more grams of pseudoephedrine to her was erroneous and counsel should have advised against stipulating to that amount. She maintains she was prejudiced by counsel's conduct because, but for his mistakes, she would have been able to negotiate a better plea deal.

The Government responds that the claim is without merit because it is contradicted by Larson's affidavit and by the prisoner's sworn testimony. In his affidavit, counsel does not deny having sent his client the February 2015 letter. He nevertheless attests that he and his client had

5

"numerous meetings in regard to discovery and the status of her case" and that "[a]t no time, did [he] ever state to [her] what her potential sentence would be." (D.E. 16 at PageID 93.) He avers that "on several occasions [he] discuss[ed] the potential guideline range [with her]. . . based upon base offense level which would be determined by [her] relevant conduct and the amount of drugs attributable to her and would further be affected by the calculation of her criminal history category points." (*Id.*) He also states that Petitioner "was clearly aware, after reviewing the discovery with [him], as to the amount of drugs involved, statements which she had made to the authorities, and the range of punishment and potential penalties [to] which she could be subjected." (*Id.*) The Government notes that Harris testified at her plea hearing that she had freely and voluntarily agreed to the terms of the plea agreement and to plead guilty to Count 2 of the indictment, and that she was satisfied with her attorney's representation.

*Strickland*'s two-part test applies to a claim that counsel was ineffective at the plea stage of the criminal proceedings. *See Rodriguez-Penton v. United States*, 905 F.3d 481, 485-86 (6th Cir. 2018). "Where . . . a defendant is represented by counsel during the plea process and enters h[er] plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

The United States Supreme Court held in *Hill* that a petitioner demonstrates prejudice in the plea context by establishing "a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The Sixth Circuit recently determined that a petitioner may also establish prejudice by showing that, had she been properly advised by counsel during the plea negotiations, she "would have bargained for a more favorable plea." *Rodriguez-Penton*, 905 F.3d at 488.

6

Even assuming that counsel performed deficiently by promising Harris a lower sentence and recommending that she agree to a drug quantity of 300 to less than 1,000 grams of pseudoephedrine, the record in her criminal case belies her allegation that she was prejudiced by counsel's conduct. *See Strickland*, 466 U.S. at 697 (a court may "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice").

The plea agreement did not contain a sentence recommendation and, by signing the document, the inmate acknowledged that the agreement was the entire bargain between the parties. (No. 14-cr-10084, D.E. 38 at PageID 52, 55.) She also recognized that "any issues not specifically addressed by this plea agreement shall be resolved by the Court in accordance with applicable statutes, guidelines, rules and case law." (*Id.*, D.E. 38 at PageID 52.) In stipulating to the drug quantity, she "acknowledge[d] that th[e] stipulation is a recommendation, and that determining the amount of drugs for which the defendant should be held accountable is a matter to be determined by the district court." (*Id.*, D.E. 38 at PageID 53.) Further, Harris conceded that she was "satisfied that all acts and/or any omissions of counsel for the defense have been the result of reasonable professional judgment and that [she] has been provided adequate legal representation in this case." (*Id.*, D.E. 38 at PageID 55.)

The prisoner acknowledged in open court, under oath, that she had read and understood the plea agreement, signed it voluntarily, and understood the consequences of her guilty plea. (*Id.*, D.E. 53 at PageID 157, 160.) She also represented that she was satisfied with her attorney's advice, that no one had promised her a specific sentence, and that she was entering her guilty plea freely and voluntarily. (*Id.*, D.E. 53 at PageID 151-53, 156, 163-64.)

A petitioner's sworn testimony is presumed to be truthful and is a "formidable barrier" to collateral relief. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). To the extent Harris insists, despite

her testimony, that counsel led her to expect a sentence in the range of seventy to eighty-seven months, the Court cured that misunderstanding. The Court informed her that her maximum possible sentence was twenty years in prison, or thirty years if she had a prior drug felony, and that the Court would determine her sentence after consideration of the PSR and other factors established by Congress. (*Id.*, D.E. 53 at PageID 155, 161.) When asked whether she understood these things, she answered "Yes." (*Id.*, D.E. 53 at PageID 155, 161.) *See Cadavid-Yepes v. United States*, 635 F. App'x 291, 299-300 (6th Cir. 2016) ") (quoting *Ramos v. Rogers,* 170 F.3d 560, 565, (6th Cir. 1999) (petitioner not prejudiced by counsel's misrepresentation that he would receive a "time served" sentence where the "proper plea colloquy 'cure[d] any misunderstanding [petitioner] may have had about the consequences of his plea'"). Petitioner also has not shown any prejudice resulting from counsel's recommendation that she stipulate to a drug quantity of 300 to less than 1,000 grams of pseudoephedrine. More to the point, her assertion that she could have negotiated a lower drug-quantity stipulation rests on mere speculation that the actual drug quantity attributable to her was below 300 grams.

In its recitation of the offense conduct, the PSR stated that, "[a]ccording to the pseudoephedrine pill logs, Gena Harris made forty-six pseudoephedrine pill purchases between the dates listed in the indictment, for a total of 140.16 grams" and "she also received unknown amounts of pseudoephedrine from other sources." (PSR at ¶ 13 (emphasis omitted).) The document further stated that, "[b]ased on this amount combined with the statements given by Gena Harris and others involved, [she] will be attributed with between 300 grams and 1,000 gram[s] of pseudoephedrine pills, as recommended in the plea agreement." (*Id.* (emphasis omitted).) The inmate argues that forty-six pill purchases do not equate to 140.16 grams of pseudoephedrine. She relies on the Sixth Circuit's decision in *United States v. Bargo*, 482 F. App'x 78, 79 (6th Cir. 2012),

8

wherein it was found that the defendant's "108 boxes of Sudafed . . . contain[ed] 103.68 grams of pseudoephedrine."

Although Petitioner insists that the quantity of pseudoephedrine attributable to her was below 300 grams, she does not take into account the drugs she obtained from "other sources." *Bargo*, moreover, does not settle the question even as to her forty-six purchases. There is no indication in that case how many pills were in each box or how much pseudoephedrine was in each pill. There is, therefore, no basis for comparing Harris's forty-six purchases to the 108 boxes in *Bargo*.

In addition, counsel verified that Petitioner "review[ed] the discovery [materials] with [him], as to the amount of drugs involved [and] statements which she had made to the authorities." (D.E. 16 at PageID 93.) Harris acknowledges that these conversations took place. (D.E. 19 at PageID 112.) Moreover, at the plea hearing she agreed with the prosecution's recitation of the offense conduct, which included the statement that "Ms. Harris's National Precursor Log Exchange report shows that she made purchases of pseudoephedrine during the period covered by the indictment in the total amount of 300.56 grams."[5] (No. 14-cr-10084, D.E. 53 at PageID 164-65.) The prisoner has therefore not shown any basis for her belief that she could have negotiated a stipulation to a lower drug quantity.

Accordingly, Petitioner has not established that counsel rendered ineffective assistance with regard to her guilty plea. Claim 1 is DENIED.

---

[5]"[T]he National Precursor Log Exchange System (NPLEx) [is] an electronic logging system used by pharmacies and law enforcement to track sales of over-the-counter cold and allergy medications containing precursors to methamphetamine[.]" *Blaisdell v. Vill. of Cassopolis*, Case No. 1:15-cv-575, 2016 WL 354708, at *1 (W.D. Mich. Jan. 29, 2016).

III.   Claim 2

Harris claims she is entitled to relief on the ground that her sentence was based on "erroneous information added into her PSR by the probation office and the prosecution." (D.E. 1 at PageID 6.)  The claim is not well-pleaded.

Although courts are to liberally construe *pro se* pleadings, where "claims are stated in the form of conclusions without any allegations of fact in support thereof," a § 2255 petition is "legally insufficient to sustain a review." *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam); *accord Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("[m]erely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim").  Harris does not identify in the Petition what information in the PSR she believes is incorrect.  She also does not provide a factual elaboration in her supporting memorandum, insisting only that "[a] lot of the information in her PS[R] was untrue," which "placed her into a higher criminal category." (D.E. 7 at PageID 32.)  Because Claim 2 is wholly conclusory, is it DISMISSED.

IV.   Claim 3

The prisoner avers that her sentence must be set aside because the Court "us[ed] the incorrect base offense level and erroneous enhancements." (D.E. 1 at PageID 8.)  She insists, specifically, that points should not have been added to her criminal history score pursuant to U.S.S.G. § 4A1.2(c) for her prior Tennessee misdemeanor drug convictions and that the addition of two points to her criminal history score under U.S.S.G. § 4A1.1(d) was not justified.

The Sixth Circuit recently reaffirmed that a "non-constitutional challenge to [the defendant's] advisory guidelines . . . is [generally] not cognizable under § 2255." *Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018), *reh'g en banc denied* (Dec. 18, 2018).  For Harris to

prevail on Claim 3, the alleged errors in the application of the Guidelines must amount to "fundamental defect[s] which inherently result[ed] in a complete miscarriage of justice." *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). She cannot make that showing.

With regard to her argument that her misdemeanor convictions should not have been counted toward her criminal history score, the inmate acknowledges in her reply that the challenge is without merit, as those convictions do not fall within an exception under U.S.S.G. § 4A1.2(c). (D.E. 19 at PageID 109 n.1.) There was thus no fundamental defect in the assignment of criminal history points to those convictions. *See, e.g.*, *United States v. Tatum*, 743 F. App'x 589, 592, 594 (6th Cir. 2018) (holding criminal history point was properly assigned to defendant's Ohio misdemeanor marijuana offense, noting that "all felony sentences and all misdemeanor offenses" count "unless an exception for a specific misdemeanor offense applies under U.S.S.G. § 4A1.2(c)").

There was also no fundamental defect in the two-point increase in Harris's criminal history score for her having "commit[ed] the [federal] offense while on probation" on a state conviction. (PSR at ¶ 37 (applying U.S.S.G. § § 4A1.1(d)).) Prior to sentencing, her attorney filed a position paper in which he argued that her probation ended in March 2010 and she did not commit the federal offense before that date. (No. 14-cr-10084, D.E. 40 at PageID 60.) In response, the probation officer noted that "the defendant's criminal conduct" in her federal case "began in January of 2010," thus "plac[ing] the beginning of the conduct leading to her conviction within the time of part of her probationary period." (PSR Addendum at 4.) Count 2 of the indictment, to which Harris pleaded guilty, did, indeed, charge that the offense began "at least as early as in or about January 2010." (No. 14-cr-10084, D.E. 2 at PageID 4.) In addition, as the probation officer pointed out, even "[i]f the two points were removed, the defendant would still [have been] in

11

criminal history category IV." (PSR Addendum at 4.) *See, e.g.*, *Snider*, 908 F.3d at 191 (finding that "no 'exceptional circumstances' justif[ied] issuance of the writ . . . especially because, without the career offender designation, [petitioner's] adjusted offense level after the application of various sentencing enhancements" would have remained the same). As there was no fundamental defect in the calculation of Petitioner's criminal history score, Claim 3 is DISMISSED as non-cognizable.

V.   Claim 4

In her second ineffective-assistance claim, Harris contends that she "was indicted on erroneous wording of the indictment and had counsel addressed the deficient indictment, [she] would not be facing no[r] be subject to the time that has been imposed on her by the sentencing court." (D.E. 1 at PageID 9.) The inmate does not specify in the Petition, or in her supporting memorandum or reply, what wording in the indictment she believes was "erroneous." Without factual allegations to support that conclusory assertion, she has failed to allege that counsel performed deficiently in not objecting to the indictment. Claim 4 is therefore DISMISSED as inadequately pleaded.

For all these reasons, the Petition is DENIED.

APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting

12

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that, if the district court certifies that an appeal would not be taken in good faith, the prisoner must file her motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[6]

IT IS SO ORDERED this 20th day of February 2019.

                                        s/ J. DANIEL BREEN
                                        UNITED STATES DISTRICT JUDGE

---

[6] If Petitioner files a notice of appeal, she must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.